IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN C. BERKERY,<br><br>    Plaintiff,<br><br>    v.<br><br>METROPOLITAN LIFE INSURANCE COMPANY, et al.,<br><br>    Defendants. | CIVIL ACTION<br><br>NO. 21-26-KSM |

**MEMORANDUM**

**MARSTON, J.**                                                            January 22, 2021

      This matter involves a *pro se* plaintiff seeking to proceed *in forma pauperis* in a civil action, in which he attempts to sue an insurance company and its dental insurance program because they denied him benefits allegedly owed to him under his policy and sought reimbursement for $1,200 that they had overpaid. (*See* Doc. Nos. 1–2.) In his complaint, Plaintiff John C. Berkery asserts claims against Defendants Metropolitan Life Insurance Company and MetLife Veterans Affairs Dental Insurance Program ("VADIP") (collectively, "Defendants") for breach of contract, common law fraud and deceit, bad faith under 42 Pa. Cons. Stat. Ann. § 8371, violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. Ann. §§ 201-1–201-9.2 ("UTPCPL"), and violations of Pennsylvania's Unfair Insurance Practices Act, 40 P.S. § 1171.1 *et seq.* ("UIPA"). (Doc. No. 2.)

      At this stage, the Court must consider first, whether to permit Berkery to proceed *in forma pauperis*, and second, whether Berkery's complaint passes muster under the screening process mandated by 28 U.S.C. § 1915(e). For the reasons that follow, although we will grant

the plaintiff leave to proceed *in forma pauperis*, we will dismiss the complaint for lack of subject matter jurisdiction.

## I.     Factual Background

The following facts are taken from the complaint, and are liberally construed in the light most favorable to Plaintiff.

In 2013, MetLife began offering veterans a discounted dental plan, the VADIP. (*Id.* at ¶ 7.) Berkery's dental policy with Defendants was "in full force and effect" between December 1, 2018 and November 30, 2019. (*Id.* at ¶ 8.)

Berkery alleges that his dentist, Dr. Valdes, performed $2,400 worth of crown work over the course of four visits, from March 2019 to January 2020. (*Id.* at ¶¶ 8–9.) On March 5, 2019, Defendants pre-approved the claim for $1,200, and did not provide a deadline by which the work had to be completed. (*Id.* at ¶ 8; *see also id.* at p. 37 ("She sent to you for a pre-authorization of her bill of $2,400 ($600 per tooth, 4 teeth). You authorized said work and paid the covered 50% of the amount, $1,200.").) Nonetheless, Defendants denied the claim after his January 14, 2020[1] appointment, which Berkery asserts was the fourth and final visit related to the same crown work that had been pre-approved the year before. (*Id.* at ¶ 10; *but see id.* at p. 37 ("The authorized and approved work involved about four visits over the course of 2019, which work was duly performed.").)

---

[1] Berkery also claims that the crown work took longer than anticipated because of the COVID-19 pandemic. (*See, e.g.*, Doc. No. 2 at ¶ 9 ("Dr. Valdes performed the work during the period between March 2019 and January 2020, involving four visits. She had to close her office during part of this period due to COVID. To this day she still isn't open on a full-time basis."); *id.* at p. 39 ("You gave the dentist no deadline when the work had to be completed. COVID delayed it somewhat.").) However, Berkery does not plead any facts showing how the pandemic prolonged the crown work. Even liberally construing Berkery's complaint, as we must, we cannot find this assertion to be plausible, given that the dental work began in March 2019—about a year before COVID-19 shut down a large number of operations across the state—and ended in mid-January 2020, approximately two months before any Pennsylvania businesses were forced to shut down.

MetLife demanded reimbursement for the $1,200, claiming that it had overpaid (*see, e.g.*, *id.* at p. 40), and Berkery appealed that decision. (*See id.* at p. 37 (May 19, 2020 Ltr.).) Berkery also threatened taking legal action. (*See id.* at pp. 38–39.)

On July 2, 2020, an appeal specialist from MetLife responded to Berkery's May 19 letter (*see id.* at p. 40) and wrote, i*nter alia*:

> You have completed the first level of appeal regarding an overpayment totaling $1,200.00 for services performed on January 14, 2020 . . . . According to our records, a claim was previously received for dental services performed on January 14, 2020. At the time of receipt, our records reflected active dental coverage in effect. Therefore, the claim was processed and benefits totaling $1,200.00 were issued to Dr. Veronica Valdes on January 24, 2020 . . . .
>
> Subsequent to the processing of this claim, we received notification that the premiums were not paid, and coverage cancelled on November 2019. . . . *As this policy does not provide benefits for services performed after the termination date of coverage and the claim was processed prior to receipt of this termination date, an overpayment in the amount of $1,200.00 was identified for the January 14, 2020 claim.* The overpayment team was notified and requests for refund were issued.

(*Id.* (emphasis added); *see also id.* at p. 42 ("[T]here is a premium payment discrepancy which ca[u]sed your coverage to lapse due to non-payment of premium. Please note that at this time, based on your payment history you have paid for VADIP coverage through November 30th, 2019.").)

On July 28, 2020, Berkery appealed again (*see id.* at p. 39), and reiterated his threat to take legal action against MetLife if the issue was not resolved (*see id.*). A few months later, on October 15, 2020, MetLife reiterated its position and sent a follow-up letter to Berkery regarding the $1,200 reimbursement:

> A review of the above file disclosed an overpayment in the amount of $1,200 . . . . This letter contains instructions for returning this overpayment to MetLife.
>
> This overpayment was the result of benefits being issued to you or on your behalf to your dentist for services, which were rendered when your dental coverage was not in effect. Since any fee billed for services rendered when coverage is not in

>effect would be your financial responsibility, we are seeking reimbursement of this overpayment from you.

(*Id.* at p. 43.)

On January 4, 2021, Berkery commenced this action by filing an application for leave to proceed *in forma pauperis* (the "IFP application") and his complaint. (*See generally id.*) In his complaint, Berkery asserts five state law causes of action—breach of contract, common law fraud, bad faith, and violations of the UTPCPL and UIPA—and seeks "actual damages in the amount of $1,200.00 for the work VADIP approved and Dr. Valdes duly performed in reliance on that approval" and "[p]unitive damages in excess of $75,000." (Doc. No. 2 at pp. 1–18.)

## II.     IFP Application

Pursuant to 28 U.S.C. § 1915(a), federal courts may authorize the commencement of a civil action, "without prepayment of fees or security," by a plaintiff "who submits an affidavit that includes a statement of all the assets [he] possesses," showing that he is unable to pay the costs of the lawsuit. 28 U.S.C. § 1915(a)(1); *see also Chain v. Gross*, Civil Action No. 18-4610, 2018 WL 5631642, at *1 (E.D. Pa. Oct. 31, 2018) ("§ 1915(a) allows a litigant to commence a civil or criminal action in federal court *in forma pauperis* by filing in good faith an affidavit stating, among other things, that he is unable to pay the costs of the lawsuit." (quotation marks and citations omitted)). If, upon "review [of] the affiant's financial statement," the court is "convinced that [the plaintiff] is unable to pay the court costs and filing fees, the court will grant leave to proceed *in forma pauperis*." *Chain v. Gross*, 2018 WL 5631642, at *2 (quotation marks and citation omitted).

Here, after reviewing Berkery's IFP application (*see* Doc. No. 1), it appears that he is unable to pay the costs of bringing this lawsuit. Therefore, we will grant him leave to proceed *in forma pauperis*.

### III. *Legal Standard: § 1915 Screening and Sua Sponte Review for Subject Matter Jurisdiction*

Because we have granted Berkery leave to proceed *in forma pauperis*, we are statutorily mandated by 28 U.S.C. § 1915 to conduct a preliminary review (i.e., screening) of this action. *See, e.g., Feingold v. Brooks*, 791 F. App'x 325, 325–26 (3d Cir. 2020) (affirming the court's decision to *sua sponte* dismiss a time-barred claim when conducting "the screening process mandated by 28 U.S.C. § 1915 for litigants proceeding *in forma pauperis*"); *Smith v. Shop Rite*, Civil Action No. 3:17-cv-0907, 2018 WL 2424136, at *2 (M.D. Pa. May 9, 2018) ("This Court has a statutory obligation to conduct a preliminary review of *pro se* complaints brought by litigants given leave to proceed *in forma pauperis*."). Accordingly, we must review Berkery's complaint and dismiss his lawsuit if the action is frivolous or malicious; the complaint fails to state a claim on which relief may be granted; or the action seeks money damages from an immune defendant. 28 U.S.C. § 1915(e)(2); *Chain*, 2018 WL 5631642, at *2 ("Because the court has granted [the plaintiff] leave to proceed *in forma pauperis*, the court must engage in the second part of the two-part analysis and examine whether the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or asserts a claim against a defendant immune from monetary relief."); *Passarella v. Citizen's Bank*, Civil Action No. 17-4349, 2018 WL 1251739, at *2 (E.D. Pa. Mar. 12, 2018) (same); *see also Berkery v. Gudknecht*, 763 F. App'x 288, 288 (3d Cir. 2019) ("Section 1915(e)(2) provides that a district court 'shall dismiss the case at any time if the court determines that' the case 'fails to state a claim on which relief may be granted.'").

In evaluating whether to dismiss the plaintiff's complaint for failure to state a claim under § 1915(e), we apply the same standard used for motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *Muchler v. Greenwald*, 624 F. App'x 794, 797 (3d Cir. 2015); *see also*

5

*White v. Barbe*, 767 F. App'x 332, 334 (3d Cir. 2019). Therefore, we must determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). Although we must accept as true the allegations in the complaint, we are not "compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Castleberry v. STI Grp.*, 863 F.3d 259, 263 (3d Cir. 2017) (quotation marks omitted). In other words, a "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (quotation marks and citation omitted). "Conclusory assertions of fact and legal conclusions are not entitled to the same presumption." *Id.* "While a plaintiff's factual allegations must be enough to raise a right to relief above a speculative level, complaints filed *pro se* must be liberally construed." *Muchler*, 624 F. App'x at 797 (quotation marks and citations omitted)); *see also Smith*, 2018 WL 2424136, at *2 (noting that although "[a] complaint by a pro se litigant is to be liberally construed," "pro se litigants still must allege sufficient facts in their complaint to support a claim" (quotation marks and citations omitted)).

Courts also have the authority to evaluate subject matter jurisdiction *sua sponte* during this review. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action."); *see also Mowery v. Wetzel*, Case No. 1:19-cv-44, 2019 WL 2931672, at *1 (W.D. Pa. June 11, 2019) ("Among other things, [§ 1915(e)] requires the Court to dismiss any action in which subject matter jurisdiction is lacking and/or the plaintiff has failed to state a claim upon which relief may be granted."); *Muchler*, 624 F. App'x at 797 (affirming district court's dismissal of the *pro se* complaint under

6

§ 1915(e) and explaining that the "[d]istrict court properly concluded that [the plaintiff] failed to state a claim upon which relief could be granted because neither the complaint nor the amended complaint asserted a claim over which the District Court had jurisdiction"). Plaintiffs who initiate an action in federal court, such as Berkery, bear the burden of establishing federal jurisdiction. *See, e.g.*, *Chain*, 2018 WL 5631642, at *3.

## IV.   Discussion

"Federal courts are courts of limited jurisdiction and may only assert jurisdiction over certain matters, such as where there is diversity of citizenship between the parties or where a question is presented under federal law." *Gray v. Peruto*, 481 F. App'x 716, 717 (3d Cir. 2012). Berkery asserts that we have subject matter jurisdiction under 28 U.S.C. § 1331 because his case arises under federal law and that diversity subject matter jurisdiction exists under 28 U.S.C. § 1332(a)(1). (Doc. No. 2 at ¶¶ 5–6.) But Berkery is mistaken: there is no basis for jurisdiction in this matter.

Under § 1331, federal district courts have original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States. *See* 28 U.S.C. § 1331; s*ee also Muchler*, 624 F. App'x at 797. Berkery's claims, however, all arise under *state* law, *not federal* law. (*See* Doc. No. 2 at pp. 1–18 (listing the causes of action as breach of contract and common law fraud (which are two state common law claims), as well as violations of three Pennsylvania statutes, including violations of the bad faith statute and violations of the UTPCPL and UIPA).)

As a result, the only independent basis for jurisdiction over Berkery's state law claims is 28 U.S.C. § 1332(a). *See, e.g.*, *Muchler*, 624 F. App'x at 798 ("Having determined that [the plaintiff] failed to allege a federal claim and was asserting a state law breach of contract claim

7

against the County Defendants, the District Court could only have exercised jurisdiction over this claim if diversity jurisdiction was properly plead."); *Paris v. Lamas*, Civil Action No. 20-CV-3700, 2020 WL 6083427, at *3 (E.D. Pa. Oct. 15, 2020). Under 28 U.S.C. § 1332(a), a federal district court has original jurisdiction over a civil action between citizens of different states where "the matter in controversy exceeds the sum or value of $75,000." 28 U.S.C. § 1332(a); *see also Muchler*, 624 F. App'x at 798. Complete diversity requires that "the controversy be between citizens of different states." *Gray*, 481 F. App'x at 717. Here, that requirement is satisfied: Berkery alleges that he is a Pennsylvania citizen, that MetLife is a Delaware corporation with headquarters in New York, and that VADIP has a principal place of business in Texas. (*See* Doc. No. 2 at ¶¶ 1–3.)

Our inquiry, therefore, is focused on whether Berkery has satisfied the amount in controversy requirement. "The sum claimed by the plaintiff controls if the claim is apparently made in good faith[,] but it must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *Muchler*, 624 F. App'x at 798 (quotation marks and citations omitted, alterations adopted). To determine whether the $75,000 threshold has been reached, we "must examine what damages are recoverable under state law." *Id.* To the extent "both actual and punitive damages are recoverable, punitive damages are properly considered in determining whether the jurisdictional amount has been satisfied." *Id.*

Punitive damages are available under Pennsylvania's bad faith statute, as well as for common law fraud claims. *See Klein v. Weidner*, 729 F.3d 280, 296 (3d Cir. 2013) ("It is well established that, under Pennsylvania law, punitive damages may be awarded in cases of common law fraud."); 42 Pa. Cons. Stat. Ann. § 8371. In addition, "although 28 U.S.C. § 1332 excludes 'interests and costs' from the amount in controversy, attorney's fees are included where they are

8

available to successful plaintiffs under the statutory cause of action, as they are under 41 Pa. Cons. Stat. Ann. § 8371[,]" Pennsylvania's bad faith statute. *Alberty v. Nationwide Mut. Ins. Co.*, Civil Action No. 05-1319, 2005 WL 8176235, at *3 (W.D. Pa. Oct. 25, 2005); *see also Morris v. Bankers Life & Cas. Co.*, Civil Action No. 11-7675, 2012 WL 602418, at *2 (E.D. Pa. Feb. 24, 2012).

Here, Berkery seeks actual damages in the amount of $1,200 for the crown work his dentist performed and "punitive damages in excess of $75,000." (Doc. No. 2 at pp. 17–18.) In other words, Berkery seeks $73,800 in punitive damages, which results in a drastic ratio between the punitive and compensatory damages (approximately 61 to 1). But, as the Supreme Court has explained, "in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages will satisfy due process." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003) ("Single digit multipliers are more likely to comport with due process."); *see also Kalick*, 372 F. App'x at 322. Here, a punitive damages award of even nine times the amount Berkery seeks in compensatory damages ($1,200) is a mere $10,800—far below the jurisdictional amount.

The Third Circuit's *Kalick v. Northwest Airlines Corporation* decision is instructive. 372 F. App'x 317 (3d Cir. 2010). There, the plaintiff brought claims against the defendant-airline for breach of contract and fraud. *Id.* at 321. "On the face of the complaint," the plaintiff's damages arose from his unplanned stay in a Dallas airport for one night and his arrival in Philadelphia one day late. *Id.* The plaintiff demanded $163,000 in damages—his compensatory damages amounted to $1,433.59 and his punitive damages accounted for the remainder, $161,600. *Id.* When evaluating whether the plaintiff had met the amount in controversy requirement, the Third Circuit held that "[e]ven a liberal construction of [the plaintiff's] pleadings" could not "lead to

9

the conclusion that he [was] entitled to recover the necessary amount of damages." *Id.* In explaining the reasons for its conclusion, the Third Circuit emphasized that "[s]uch a drastic ratio between the punitive and compensatory damages (112 to 1) would almost certainly violate the constitution." *Id.* at 322.  The Third Circuit added, "Even assuming that [the plaintiff] could recover twice the amount of compensatory damages he requests, or approximately $2900, his maximum punitive damages would leave him well short of the amount in controversy requirement." *Id.*  As such, the Third Circuit affirmed the district court's holding that it lacked subject matter jurisdiction over the plaintiff's state law claims. *Id.*

We are persuaded by the court's reasoning in *Kalick* and find it analogous to the case presently before us.  From the face of the complaint, Berkery's damages arose from Defendants' demand for reimbursement of $1,200 and their conclusion that they had overpaid his benefits because his policy was not active at the time of his final dental appointment.  As in *Kalick*, we hold that even the most liberal interpretation of Berkery's complaint cannot plausibly lead to the conclusion that Berkery is entitled to recover $75,000 in damages, particularly $73,600 in *punitive* damages.

V.   **Conclusion**

For the foregoing reasons,[2] we dismiss Berkery's complaint under § 1915(e) for lack of subject matter jurisdiction, with prejudice and without leave to amend.

---

[2] Additionally, at least two of Berkerky's claims clearly fail to state a claim as a matter of law from the very face of the complaint.

First, as Berkery himself admits (*see* Doc. No. 2 at p. 15 ¶ 60), there is no private right of action under the UIPA.  *See, e.g.*, *Leach v. Nw. Mut. Ins. Co.*, 262 F. App'x 455, 459 (3d Cir. 2008) ("As the District Court pointed out, there is no private right of action under the UIPA, which can only be enforced by the state insurance commissioner."); *Weinberg v. Nationwide Cas. & Ins. Co.*, 949 F. Supp. 2d 588, 598 (E.D. Pa. 2013) ("Courts within the Third Circuit and the Commonwealth of Pennsylvania continue to

"Generally before dismissing a complaint, the district court should grant to leave amend unless the court determines that amendment would be futile." *Muchler*, 624 F. App'x at 799 (affirming the district court's dismissal with prejudice and finding that "[l]eave to amend would have been futile in this circumstance because it is inconceivable that [the plaintiff] could allege additional facts arising out of the remodeling work he allegedly performed that would bring his claims within the original jurisdiction of the District Court"). Here, an amendment would be futile because Berkery cannot possibly reach the $75,000 threshold when he only suffered $1,200 in compensatory damages, even taking into account possible punitive damages. Although we do not grant leave to amend in federal court, Berkery may refile his claims in state court.

An appropriate order follows.

---

recognize that the UIPA does not provide plaintiffs with a private cause of action." (collecting cases)). Accordingly, dismissal is warranted as to Count Five, the UIPA claim.

Second, "[t]here is no right to recover under the UTPCPL for nonfeasance, which is the failure to perform a contractual duty." *Leach*, 262 F. App'x at 459. To that end, "[a]n insurer's failure to pay benefits under a policy constitutes simple nonfeasance and is not actionable under the UTPCPL." *Id.* (affirming dismissal of the plaintiff's UTPCPL claim because he "argued only that Northwestern improperly denied him disability benefits, which constitutes nonfeasance"). Here, the crux of Berkery's claim is that Defendants wrongly denied him $1,200 allegedly owed to him under his policy. (*See generally* Doc. No. 2.) Because this denial of policy benefits constitutes nonfeasance, *see Leach*, 262 F. App'x at 459, Berkery fails to state a claim as a matter of law under the UTPCPL (Count Four).

11